SCOTT R. BURTON, ESQ., #96898
Attorney at Law
574 S. Rancho Santa Fe Road
San Marcos, CA 92078
Telephone: (760) 727-4746
E-mail: srburtonatty@aol.com

Attorney for Debtor, Margo D. Birk

UNITED STATE BANKRUPTCY COURT

SOUTHERN DISTRICT OF CALIFONIA

| | |
|---|---|
| In Re:<br><br>MARGO D. BIRK<br><br>Debtor.<br><br>MARGO D. BIRKS,<br>          Plaintiff<br>vs.<br><br>US DEPARTMENT OF EDUCATION,<br>MOHELA, AND DOES 1 through 5,<br>inclusive,<br><br>          Defendants. | Case No.: 22-03256-MM7<br><br>Chapter 7<br><br>Adversary Case Number:<br><br>**PLAINTIFF'S COMPLAINT TO DETERMINE DISCHARGEABILITY FOR UNDUE HARDSHIP RE: US DEPARTMENT OF EDUCATION AND MOHELA** |

## PLAINTIFF'S COMPLAINT

Comes now, Plaintiff Margo D. Birk to file this Complaint against Defendants, US Department of Education and Mohela, and DOES 1 through 5, inclusive, on personal knowledge as to Plaintiff's own acts and upon information and belief as to all other matters as follows:

1

# I
# PARTIES

**A. Plaintiff**

1. Margo D. Birk is a citizen of the State of California, residing in the Southern District of California.

2. The United Stated Department of Education is a corporation headquartered in the Washington. DC and can be served at Department of Education Building, 400 Maryland Aenue, SW, Washington, DC 20202.

3. Mohela is a corporation headquartered in the State of Missouri, and can be served at 633 Spirit Drive Chesterfield, MO 63005-1243.

4. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant DOES 1 through 25, inclusive, are unknown to Plaintiff and Plaintiff therefore sues said Defendants by such fictitious names. When the true names and capacities of such Defendants are ascertained, Plaintiff will ask leave of this Court to amend this Complaint by inserting the true names and capacities of said Defendants. Plaintiff is informed and believes and based upon such information and belief, alleges that each of the Defendants designated herein as a DOE is legally responsible in some manner for the events and happenings herein referred to, and thereby caused injury and damages to Plaintiff as herein alleged.

# II
# JURISDICATION AND VENUE

This adversary proceeding is brought under US Bankruptcy Court case number 22-03256-MM7.

5. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §1334(b) and 28 U.S.C §157(b). This is a core proceeding under title 11 because it concerns a determination as to the dischargeability of a debt.

6. This adversary proceeding is brought pursuant to 11 U.S.C. §523(a)(8), 15 U.S.C §1601, 15 U.S.C. §1692 and Federal Rules of Bankruptcy Procedure Rule 7001.

7. Venue is proper in the Southern District of California pursuant to 28 U.S.C. §1409 because this matter arises in ad is related to a bankruptcy case in this district.

### III

### FACTUAL AND ROCEDURAL BACKGROUND

**A. Background of the Issue**

8. The federal student loan program was originally designed in response to Sputnik. After the successful launch of the Soviet rocket, the U.S. government became worried that the Russians were outpacing Americans in science and math education. In order to make Americans more competitive in the space race, the government authorized the creation of the National Defense Education Act in 1958 and the Guaranteed Student Loan Program (now the Stafford Loan) in 1965.

9. Even by the 1970s, few students needed loans to go to college. The average cost of tuition was only $2,587 and the average debt for a medical student was only $13,469. With Pell grants, scholarships, and summer jobs, even kids from lower-income backgrounds could often make it through college debt free. But largely in response to anecdotal evidence about a few dishonest lawyers filing for bankruptcy immediately after graduation, Congress made student loans presumptively non-dischargeable in bankruptcy for the first five years of

3

repayment, unless excepting such discharge would impose an "undue hardship" on the debtor or her dependents. Although this rule was at odds with the fundamental purpose of the bankruptcy code, it was perhaps a reasonable exception as it only applied to the first five years of repayment.

10. Congress did not define "undue hardship" in 1978 but instead left that determination to the courts. Over the next thirty ears, courts wrestled with meaning of "undue hardship" creating and discarding nearly a dozen tests, working within and without the text of the statute, now commingling the court's equitable powers under Section 105 with the Court's mandate under Section 523(a)(8), now refusing to do so. Over time, two tests have emerged triumphant from the cauldron of judicial lawmaking: the Brunner Test ("Brunner") and the Totality of the Circumstances Test ("TOC"). These two tests are supplemented with wide disagreement over whether courts are permitted to discharge one of several loans, a practice known as "partial discharge".

11. After Brunner and TOC had codified the meaning of "undue hardship", Congress amended section 523(a)(8) in two chief ways: (1) abolishing the five year time frame and making student loans non-dischargeable in perpetuity; and (2) adding subsection 523(a)(8)(B) which excepted from discharge qualified private student loans. The problem with these amendments is that the "undue hardship" standards were created when courts were only charged with determining whether repayment of federally insured loans with capped interest rates during the first five years would constitute an undue hardship. Both Brunner and the Totality of the Circumstances tests are therefore incredibly harsh because courts knew that after five years the debt could be discharged without any showing of additional financial strain whatsoever.

4

12. Although Brunner/TOC is binding precedent in this Circuit, Plaintiff humbly prays that this Court reconsider the applicability of that precedent given the changing legal landscape of Section 523(a)(8) since the time Brunner/TOC was enacted.

**B.** **Plaintiff Files for Bankruptcy**

13. Plaintiff borrowed a total of $28,443.00, consisting of four separate loans, to wit: $2,750.00, $12,500.00, $5,500.00, and $7,693.00, from Defendants, US Department of Education and Mohela in order to attend college, between 2012 and 2022.

14. Owing to circumstances beyond her control, Plaintiff filed for bankruptcy in this Court on December 26, 2022.

15. Plaintiff's combined student loan debt is now $32,690.63. Plaintiff's current monthly income, after taxes, is $5,300.00. According to Plaintiff's Schedule J, her monthly expenses are $5,504, exclusive of her student loan debt.

16. Plaintiff's combined student loan payments cost her approximately $350.00 per month.

17. Plaintiff's student loan payments constitute 6.6% of Plaintiff's take home pay.

### IV

### CLAIMS OF RELIEF

**A.** **Count One: Determination of Dischargeability**

18. Plaintiff realleges and incorporated by reference all of the allegations contained in paragraphs 1 through 17 above.

19. Plaintiff is entitled to discharge of her student loan debt, either in whole or in part, because repayment would constitute an "undue hardship" on her.

20. Plaintiff meets the standard for undue hardship as articulated in **Brunner/Totality of the Circumstances.**

21. Accordingly, Plaintiff prays this Court discharge her private student loan debt in part or in total.

## V

## JURY DEMAND

22. Pursuant to her rights under Rule 58 of the Federal Rules of Civil Procedure and rule 9015 of the Federal Rules of Bankruptcy Procedure, Plaintiff hereby requests a trial by jury on all issues so triable.

## VI

## PRAYER

In light of the foregoing, Plaintiff requests that Defendants, and each of them, be cited to appear and judgment be entered against Defendants, and each of them, for:

1) declaratory and injunctive relief;

2) determination of dischargeability;

3) other such relief as the Court deems just and proper.

Respectfully submitted,

3/23/2023

_____
SCOTT R. BURTON,
Attorney for Debtor/Plaintiff